UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **D.R., by her parent and next friend DOLORES ROBINSON, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA, et al.,**<br><br>**Defendants.** | Civil Action No. 07-1266 (JDB) |

## MEMORANDUM OPINION

Plaintiffs D.R. and her mother and next friend, Dolores Robinson, bring this action against the District of Columbia and Michelle Rhee, the Chancellor of the District of Columbia Public Schools ("DCPS"). Plaintiffs allege that defendants denied D.R. a free appropriate public education ("FAPE") within the meaning of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, and they challenge a Hearing Officer's Determination ("HOD") that dismissed their case on April 17, 2007. Now before the Court are the parties' cross-motions for summary judgment. For the reasons discussed below, the Court will grant defendants' cross-motion for summary judgment and deny plaintiffs' motion for summary judgment.

## BACKGROUND

**I. The Individuals with Disabilities Education Act**

Under the IDEA, all states, including the District of Columbia, that receive federal education assistance must establish policies and procedures to ensure that "[a] free appropriate public education [FAPE] is available to all children with disabilities residing in the State[.]" 20

U.S.C. § 1412(a)(1)(A). The law defines FAPE as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required[.]" Id. § 1401(9). Once a child is found to qualify for a FAPE, DCPS is required to develop and implement an Individualized Education Program ("IEP") for him or her. Id. § 1414(d)(2)(A). The IEP comprehensively describes the student's present academic level, details measurable annual goals for the student, specifies necessary educational and related services, and establishes the extent to which the student will participate in a regular education classroom. Id. § 1414(d)(1)(A)(I).

In order to implement the IEP, a team that includes the child's parents determines where the child should be placed. Id. § 1414(e). If no public school can meet the child's needs, DCPS is required to place him or her at an appropriate private school and pay the tuition. Id. § 1412(a)(10)(B)(I); see Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 369 (1985). If a parent disagrees with the IEP or the subsequent placement, he or she is entitled to an "impartial due process hearing" conducted by the state or local educational agency. 20 U.S.C. § 1415(f)(1)(A). Any party aggrieved by the hearing decision may bring a civil action in federal district court challenging it. Id. § 1415(i)(2)(A).

## II.  Factual Background[1]

Plaintiff D.R. is a student who has been classified as emotionally disturbed for the special education purposes of the IDEA.  Pls.' Stmt. ¶ 1.  She was seventeen years old when the due process complaint that began this lawsuit was filed on February 1, 2007.  Id.  At that time, D.R. was enrolled at D.C. Alternative Learning Academy.  Compl. ¶ 6.  That school closed before the 2007-08 school year, so D.R. enrolled at Ballou Senior High School ("Ballou"), a DCPS school.  Defs.' Mem. Ex. C at 2.  During that school year, however, she transferred to Monroe School, a private school.  Id.  D.R. then re-enrolled at Ballou for the 2008-09 school year.  Id.  Prior to the due process complaint that began this lawsuit, D.R.'s most recent IEP was completed on December 22, 2004.  Pls.' Stmt. ¶ 8.  For each week, this IEP called for twenty-seven hours of specialized instruction, two hours of counseling, and one hour of speech and language therapy.  Id. ¶ 1.

Plaintiffs have filed three due process complaints seeking a revision of D.R.'s IEP and the evaluations necessary to make that revision.  Pls.' Stmt. ¶¶ 2, 3; Defs.' Mem. Ex. A at 3.  On April 24, 2006, plaintiffs filed the first due process complaint through attorney Steven Boretos.  Administrative Record ("A.R.") at 84-86.  On July 11, 2006, the Hearing Officer issued a Determination ("HOD #1") requiring defendants to complete a comprehensive psychological evaluation, a speech and language evaluation, and a vocational assessment.  Id. at 86.  If defendants did not complete these tests within forty-five days, they were to fund independent

---

[1] Pursuant to Local Rule 7(h), plaintiffs and defendants each provided a statement of material facts that they allege are not genuinely at issue.  The Court refers to these statements respectively as "Pls.' Stmt." and "Defs.' Stmt."  The facts summarized in this section are not in dispute except where noted.

evaluations. Id. The Hearing Officer further ordered defendants to convene a team meeting within fifteen days of receiving all of the evaluations for the purpose of revising D.R.'s IEP. Id. D.R. received the required independent evaluations during the fall of 2006. Id. at 90, 98, 103. However, DCPS's special education coordinator did not receive the results of these evaluations until November 20, 2007, more than a year after the last evaluation was complete. Defs.' Mem. Ex. A at 3.[2]

Meanwhile, defendants filed a second due process complaint on February 1, 2007, through attorney Fatmata Barrie. A.R. at 12. The allegations in this complaint were essentially the same as the allegations in the April 24, 2006 complaint, except that they expressly included the 2006-07 school year. See Defs.' Mem. at 5-6 (comparing allegations in the two due process complaints). The complaint stated that D.R. had yet to receive her evaluations, A.R. at 14, which, according to the record, was not true at the time plaintiffs filed the complaint. Id. at 90, 98, 103. At the hearing on this due process complaint, Ms. Barrie and Ms. Robinson, D.R.'s mother, suggested that the change of attorneys may have caused some of the confusion. Id. at 117. The Hearing Officer ruled on April 17, 2007 ("HOD #2") that in light of HOD #1 res judicata barred the issues raised in the second complaint, despite plaintiffs' objections that HOD #1 did not encompass the 2006-07 school year. See id. at 128. Plaintiffs timely appealed HOD #2 to this Court on July 16, 2007.

While that action was pending in this Court, plaintiffs filed a third due process complaint on October 1, 2007, through Mr. Boretos, plaintiffs' attorney for HOD #1. Defs.' Mem. Ex. A at 1. That due process complaint itself is not part of the administrative record. Nonetheless, HOD

---

[2] Neither party explains this delay.

-4-

#3 resolves the same issues raised in the first two due process complaints, in addition to the question whether defendants had violated HOD #1 by not timely updating D.R.'s IEP. Id. at 3. The Hearing Officer issued a Determination ("HOD #3") on December 17, 2007 requiring defendants to convene a team meeting within ten school days to update D.R.'s IEP based on the evaluation results that defendants had received on November 20, 2007. Id. Defendants convened this meeting on September 23, 2008, more than nine months after the original deadline, and revised D.R.'s IEP to include specialized instruction and remove her from general education. Defs.' Mem. Ex. B at 1. In a subsequent team meeting on October 14, 2008, defendants agreed to provide D.R. with, among other things, eighteen months of compensatory education at three sessions per week. Defs.' Mem. Ex. C at 1.

The present case is an appeal of HOD #2. This Court dismissed a portion of plaintiffs' complaint on February 26, 2008. Robinson ex rel. D.R. v. Dist. of Columbia, 535 F. Supp. 2d 38, 42 (D.D.C. 2008) (dismissing plaintiffs' claims under 42 U.S.C. § 1983 and 29 U.S.C. § 794). After those proceedings, defendants filed an answer, plaintiffs moved for summary judgment, and defendants cross-moved for summary judgment. The parties have fully briefed these motions, and they are now ripe for resolution.

**STANDARD**

Under the IDEA, "[a]ny party aggrieved by the findings and decision" rendered during administrative proceedings may "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2), (i)(3)(A). The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant

such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). On review of an HOD, the burden of proof falls upon the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong.'" Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989)).

      The preponderance-of-the-evidence standard of review, the Supreme Court has held, does not authorize unfettered de novo review. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). Rather, consideration of the record impliedly requires courts to give "due weight" to the administrative proceedings, id., and "[f]actual findings from the administrative proceeding are to be considered prima facie correct." S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003). Therefore, courts may not substitute their own views for those of the hearing officer, see Rowley, 458 U.S. at 206; Shaw v. District of Columbia, 238 F. Supp. 2d 127, 136 (D.D.C. 2002), and a court upsetting a hearing officer's decision "must at least explain its basis for doing so," Kerkam, 862 F.2d at 887. At the same time, "the district court's authority to 'hear additional evidence at the request of a party,' and 'bas[e] its decision on the preponderance of the evidence' . . . 'plainly suggest[s] less deference than is conventional' in administrative proceedings." Reid, 401 F.3d at 521 (quoting Kerkam, 862 F.2d at 887). A motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive. See Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997) ("[T]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.").

## ANALYSIS

### I. Mootness

The Court lacks jurisdiction over any claim that does not constitute a "case" or "controversy." See U.S. Const. art. III, § 2; DeFunis v. Odegaard, 416 U.S. 312, 316 (1974). No case or controversy exists, so that any demands for relief arising therefrom are moot, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." L.A. County v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)).  Hence, "[i]f events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the U.S., 264 F.3d 52, 55 (D.C. Cir. 2001).  Plaintiffs seek as relief reversal of HOD #2, various evaluations of D.R., an updated IEP, compensatory education, and attorneys' fees.  Compl. at 6; A.R. at 15. However, HOD #3 and the events following it render each of these demands for relief moot, with the exception of plaintiffs' request for attorneys' fees.

Plaintiffs' request for the evaluations of D.R. is moot because D.R. has already received them.  HOD #1 called for a speech and language evaluation, a vocational assessment, and a comprehensive psychological evaluation.  A.R. at 86.  DCPS was to complete the evaluations within forty-five days, or "[i]f any of the evaluations are not completed in a timely manner, [D.R.] shall be entitled to an independent evaluation." Id.  Although DCPS did not complete the evaluations within forty-five days, see Defs.' Mem. at 13, D.R. did receive them later in 2006, see A.R. at 90, 98, 103.  Because the Court can "grant no meaningful relief" as to plaintiffs' request for evaluations, that request is moot.  See McBryde, 264 F.3d at 55.

To be sure, the nine evaluations plaintiffs requested in their second due process complaint -- speech and language, occupational, functional behavior assessment, clinical, psychological, psycho-educational, neuropsychological, Vineland, and social history, see Compl. ¶ 9 -- are not, on their face, identical to the evaluations ordered in HOD #1, see A.R. at 86. But plaintiffs have not argued that the evaluations ordered in HOD #1 are substantively different than the evaluations requested in their second due process complaint. The only difference that plaintiffs point to in their briefs is that unlike the evaluations requested in the second due process complaint, the HOD #1 evaluations did not address the 2006-07 school year. See Pls.' Mem. at 9-11 (explaining that HOD #1 could not have addressed the 2006-07 school year because HOD #1 was issued before the start of that school year); Pls.' Opp'n at 9 (same). Indeed, plaintiffs pressed the same distinction at the administrative hearing that resulted in HOD #2. See A.R. at 128-31. But this distinction does not alter the mootness analysis. HOD #3 -- which was issued on December 17, 2007 -- addressed the previous school years and ordered DCPS to determine the need for compensatory education for DCPS's failure to timely update D.R.'s IEP. Defs.' Mem. Ex. A at 2-3. Hence, even if the evaluations ordered in HOD #1 and requested in the second due process complaint pertain to different school years, "events [have] outrun the controversy such that the court can grant no meaningful relief [and] the case must be dismissed as moot." See McBryde, 264 F.3d at 55.

Plaintiffs' requests for an updated IEP and for compensatory education are also moot. Pursuant to HOD #3, two team meetings were held in the fall of 2008. In the first meeting, held on September 23, the multidisciplinary team produced a revised IEP. Defs.' Mem. Ex. D at 1. In the second meeting, held on October 14, DCPS agreed to provide D.R. with eighteen months of

compensatory education with three tutoring sessions each week. Defs.' Mem. Ex. C at 1. Hence, to the extent that plaintiffs sought an updated IEP and compensatory education in their second due process complaint, that relief has already been granted.

Finally, plaintiffs ask this Court to reverse HOD #2, which determined that res judicata barred consideration of plaintiffs' second due process complaint. But, as discussed above, the substantive relief plaintiffs sought in the their second due process complaint has already been granted. Hence, even if HOD #2's res judicata determination was erroneous, this Court could "grant no meaningful relief" aside from attorneys' fees. See McBryde, 264 F.3d at 55. Plaintiffs' request for attorneys' fees is discussed below. In sum, then, the mootness doctrine bars this Court from considering plaintiffs' request for evaluations, an updated IEP, compensatory education, and reversal of HOD #2's res judicata determination. All that is left standing is the dispute over attorneys' fees.

## II.  Award of Attorneys' Fees

Under the IDEA, "the court, in its discretion, may award reasonable attorneys' fees" to a "prevailing party." 20 U.S.C. § 1415(i)(3)(B)(I). Plaintiffs are arguably a "prevailing party" on two separate grounds. First, plaintiffs have gained a "material alteration of the legal relationship of the parties," Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989), and they have done so "upon obtaining a judicial remedy that vindicates [their] claim of right," Dist. of Columbia v. Jeppsen ex rel. Jeppsen, 514 F.3d 1287, 1290 (D.C. Cir. 2008) (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001)). Defendants complied with the IDEA only after several due process complaints and Hearing Officer Determinations. A.R. at 12, 85. This constitutes a change in legal status

insofar as defendants contested these complaints and offer no suggestion that they would have voluntarily complied with plaintiffs' requests.  See Herbin, 362 F. Supp. 2d at 265.  Moreover, it was an adversarial administrative proceeding (HOD #3), not a settlement or other agreement, that compelled DCPS to provide the relief that plaintiffs requested.  Defs.' Mem. Ex. A at 3; see Buckhannon, 532 U.S. at 605.

Second, plaintiffs "prevail" in the sense that, notwithstanding the mootness analysis above, they have an actionable claim against defendants.  Plaintiffs' action against defendants must rest on defendants' nine-month delay in convening a team meeting to revise D.R.'s IEP after receiving her evaluations.  Defendants funded independent evaluations, as HOD #1 allowed, and they did not receive the results of those evaluations until about one year later.  Defs.' Mem. Ex. A at 3.[3]  At this point, HOD #1 obliged defendants to convene a team meeting within fifteen business days.  A.R. at 86.  But defendants did not convene the meeting until nine months after that deadline.  Defs.' Mem. Ex. B at 1.  As a result of the meeting, defendants made substantive changes to D.R.'s IEP because D.R. had not been receiving special education services at Ballou under the old IEP.  Defs.' Mem. Ex. A at 2.

DCPS's delay in convening the team meeting amounts to a "failure to meet . . . [a] procedural deadline[]."  Lesesne ex rel. B.F. v. Dist. of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006).  Such delays are actionable only if "those procedural violations affected the student's

---

[3] HOD #3 found that plaintiffs delivered the evaluations to DCPS counsel on April 12, 2007 but that the special education coordinator did not receive the evaluations until November 20.  Defs.' Mem. Ex. A at 3.  The Court need not reach the question of whether plaintiffs' delivery of the evaluations to counsel in April (as opposed to the special education coordinator in November) counts as "receipt of the last evaluation" within the meaning of HOD #1, as the answer does not affect the outcome of this case.

substantive rights." Id. A delay does not affect substantive rights if the student's education would not have been different had there been no delay. See Gregory-Rivas v. Dist. of Columbia, 577 F. Supp. 2d 4, 11 (D.D.C. 2008) (finding no substantive violation when revised IEP did not ultimately award the compensatory education sought); Wilkins v. Dist. of Columbia, 571 F. Supp. 2d 163, 172-73 (D.D.C. 2008) (finding no effect on substantive rights when student ultimately failed to show that home bound services were necessary); Shaw, 238 F. Supp. 2d at 135 (finding no effect on substantive rights when DCPS delayed IEP for one month during the summer).

In this case, however, defendants' delay did affect D.R.'s substantive rights because, when the team meeting finally convened, it was concluded that D.R.'s IEP should differ from the one that she had previously. Defs.' Mem. Ex. C at 1-5. This case is thus more analogous to Reid ex rel. Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005), the sole case that Lesesne cites to illustrate an effect on substantive rights. See Lesesne, 447 F.3d at 834. The student in Reid received a revised IEP that included additional reading instruction and counseling after a delay. Reid, 401 F.3d at 520. Had the student received the revised IEP on schedule, he would have received these services during the period of the delay. Such services are the heart of a student's "substantive rights" under the IDEA. See id. The IEP that D.R. received on September 23, 2008 similarly changed the services that she was to receive, such as by removing her from general education and providing specialized instruction. Defs.' Mem. Ex. B at 1. D.R. was denied these services while defendants delayed the team meeting.

Plaintiffs' status as a "prevailing party," however, is merely a necessary condition for the award of fees. The Court must also, in its discretion, determine that the award of fees is

appropriate.  See 20 U.S.C. § 1415(i)(3)(B)(I) ("[T]he court, in its discretion, may award reasonable attorneys' fees[.]"); E.M. v. Marriott Hospitality Pub. Chartered High Sch., 541 F. Supp. 2d 395, 398-99 (D.D.C. 2008) (denying fees to a plaintiff assumed to have met the criteria of a "prevailing party" under the IDEA).  For the reasons discussed below, the Court declines to award attorneys' fees in this case.

First, plaintiffs stretch the limits of the term "prevailing party" within this lawsuit. Plaintiffs did attain the substantive relief sought through an adversarial proceeding that affected their legal status vis-a-vis the defendants, as the "prevailing party" standard requires.  See Tex. State Teachers Ass'n, 489 U.S. at 792-93; Buckhannon, 532 U.S. at 605.  However, plaintiffs have adduced no evidence that this lawsuit, as opposed to HODs #1 and #3, produced the desired relief.  Plaintiffs' first attorney, Mr. Boretos, filed the due process complaint for HOD #1.  A.R. at 84.  Then, plaintiffs' second attorney, Ms. Barrie, filed the due process complaint for HOD #2, making the very same allegations present in HOD #1 (albeit over a different time span) without even acknowledging HOD #1.  Id. at 14.  While HOD #2 was on appeal to this Court, plaintiffs' first attorney, Mr. Boretos, filed the due process complaint for HOD #3, without acknowledging HOD #2.  Defs.' Mem. Ex. A at 2.  HOD #3, not HOD #2, effected the change in the legal status of the parties.  Whether a plaintiff who "prevails" in an administrative determination (here, HOD #3) may even be considered a "prevailing party" in a lawsuit that was filed beforehand (here, HOD #2) is an open question.

Second, fees are awarded to limit the burden on plaintiffs who are forced to resort to a lawsuit to overcome an agency's inaction.  That is not the case here.  On February 1, 2007, when plaintiffs filed the due process complaint that gave rise to this case, defendants were not yet in

violation of HOD #1 or the IDEA.  Indeed, the complaint fails to mention HOD #1 and seeks the same relief sought previously.  A.R. at 14-15.  The complaint also demands D.R.'s evaluations as relief, but those evaluations had already been completed.  Id. at 15, 90, 98, 103.  Plaintiffs offer no explanation as to why they filed the February 1, 2007 due process complaint and then repeated their allegations to this Court on July 16, 2007 without acknowledging that the evaluations were complete.  Indeed, plaintiffs filed their motion for summary judgment on December 16, 2008 still alleging that D.R.'s evaluations and IEP were outstanding, even though D.R. had received a revised IEP and compensatory education more than two months earlier.

Most importantly, plaintiffs have received through other avenues the substantive redress that they sought.  Attorneys' fees for this largely unnecessary action are thus unwarranted and will, in any event, not affect D.R.'s educational outcomes.  Accordingly, plaintiffs' demand for fees is denied.

## CONCLUSION

In light of HOD #3 and the events that followed it, most of plaintiffs' demands for relief are moot.  Although plaintiffs' claim for attorneys' fees is still actionable, and although plaintiffs may qualify as a "prevailing party," the Court, in its discretion, will not award attorneys' fees.  Therefore, the Court will grant defendants' cross-motion for summary judgment and deny plaintiffs' motion for summary judgment.  A separate order accompanies this opinion.


/s/
JOHN D. BATES
United States District Judge

Dated:     July 27, 2009